Good morning, Your Honors. May it please the Court, Marion Yagman for the Plaintiffs Appellant. And first, this is basically pleading 101. The only issue on this appeal is whether the factual allegations in the first amended complaint support the legal elements of the claims. And I suggest that they do. There are the Article 13 of the California Constitution provides that anything that is an overcharge or an excess fee will constitute a tax. And as such, it has to be voted on. And in this case, that didn't happen. It didn't happen when Article 13 was enacted. It didn't happen since then. And it continues to this day that excess charges that do not constitute a part of the fees required to render the service of utility services, the excess fees continue to be transferred to the city as a power revenue transfer. And that's in violation of Article 13C as amended by Proposition 26, which makes very clear that this is not something that can be... How does that get you a federal claim? I beg your pardon? How does that get you a federal claim? You've just explained why it violates the state constitution. It gets me a federal claim because it's a 14th Amendment, because it's a right under the California Constitution that therefore becomes a right under the 14th Amendment due process clause. And first... Why doesn't the Johnson Act bar that theory? Well, that's very interesting because last night I was looking at the Johnson Act again. And at the case that controls in California, which is the Brooks versus Sulfur Springs Valley Cooperative. And that case turned on the fact that the state of California has 11th Amendment immunity. And the case involved here an Arizona utility that was not a public utility, but a for-profit utility that was actually... So that its rates were decided or considered by the Arizona Commission. With respect to California, the governmental utilities are not... There's no regulatory oversight by the state, so the 11th Amendment doesn't come into play. And with respect to the Brooks case, the very last sentence says, under the 11th Amendment, the district court lacked jurisdiction to hear Brooks' claims against the commission. The Johnson Act precluded the district court from entertaining Brooks' claim against the SSEV. Here, there is no 11th Amendment immunity because the state has no regulatory oversight over... But the Johnson Act isn't dependent on the 11th Amendment. It lists circumstances where if the elements are met, the claim can't be asserted. Which element of the Johnson Act is not met here? Which element of the requirements... Which requirement to make the Johnson Act applicable do you contend is not met here? I have to go back and look at the Johnson Act. The Johnson Act... It's not... First of all, in this particular case, it's not the jurisdiction... It's not based solely on diversity of citizenship or repugnance of the order to the federal constitution. We have a RICO claim. The order does not interfere with interstate commerce. Well... So you read the Johnson Act then as saying that you can have a 1983 cause of action that clearly would be barred if asserted alone, and that case would be dismissed, but the result is completely different if you tag on as second cause of action a Hobbs Act claim. Is that how you read the Johnson Act there? Yes, but I also would say that, once again, that the Johnson Act doesn't apply as to California utilities that are not... That do not have regulatory oversight by the California Energy Commission, because the Brooks case specifically states that it's based on 11th The district court similarly held that the Johnson Act didn't apply for different reasons for the fact that there were other claims... But suppose we disagree with you on all the other claims, and we just have the 1983 claim left. Wouldn't you, at that point, be invoking jurisdiction that's based solely on repugnance to the constitution, and then wouldn't that condition be satisfying? Well, you don't have to have... There's four conditions. It's not just one, and the order does not interfere with interstate commerce. Well, I say that it does because, in this particular case, they're taking money from people that they don't otherwise spend in interstate commerce. So you don't... You have a situation where the monies are being spent, are being taken from them. There's deprivation of their liberty interest, their monies taken from them are being used in interstate commerce. But that would essentially write the Johnson Act out of the code book. I mean, if anything, any taking of money, because money affects interstate commerce, it's never met and it's gone. Well, you have to look at this in conjunction with Article 13, and it says the order has been made after reasonable notice and hearing, but the reasonable notice and hearing as to excess fees is governed by Article 13 as amended by Proposition 26. And that required a vote by the electorate, and that wasn't had here. Well, there were ordinance passed, but there was no electoral vote, which they could have done. There's nothing to stop them from doing that. And that's part of why it's egregious, deliberate indifference to plaintiffs' protected property interest by their failure to have a proper... To actually have an election... Not an election, to actually have a vote on these excess fees that constituted taxes under Article 13. And plain, speedy, and efficient remedy may be had by the courts of such statement. Not true. The other case is still going on, probably will never, will take years to settle. There's nothing plain or speedy that's going to happen with respect to the state court action that actually was brought by another... That the defendants have repeatedly set forth in their cases and their opposition in their excerpts of record. So I don't think that the Johnson Act controls. I think it's plain that it doesn't under Brooks, and Brooks controls in the Ninth Circuit. And I would notice also that with respect to all of these claims, there's no mention of Article 13, virtually no mention of it, by the defendants. They just gloss... It's as though it doesn't exist. But that's rights. The rights given to the plaintiffs by Article 13 as amended by proposition, that's the crux of the matter. That's where a... If you charged overt excessive fees, all of which went to the city or transferred to the city, and the city keeps those funds. And there are other cases that show that... State cases that show that if the monies that were excessive went to some place other than the actual governing body, then such as like the county and the Schmier case, the California Schmier case having to do with paper as opposed to plastic bags, having to pay for paper bags, because the people who sold the paper bags kept the money, that was held not to be an Article 13 violation. But in this case, there was a transfer of funds to the city, and there was a constitutional violation, which the plaintiffs... Which gives the plaintiffs a right under the 14th Amendment Due Process Clause to claim deprivations, not only of their right to have a vote on it, but also their right... The deprivation of their property interest, and their right also to vote, which didn't happen. They said the money's essentially confiscated. What about your other claims? Why isn't the Wilkie case an obstacle to both the Hobbs and the RICO claims? Well, it wouldn't be a... It wouldn't affect the RICO case except as to extortion. You have a RICO predicate other than extortion? I think the other RICO predicates are listed in the complaint, and that is... Specifically, one of the elements in the RICO is that there would be personal gain for the officials, and I think the argument here that the personal gain comes through their salary. Well, they're not salaried, they're the commissioners, and they're getting all kinds of things like travel, expenses, all sorts of things. That's with respect to the commissioners. But that comes out of the general fund. It's not directly related to the transfer of those funds. It's related to the fact that they're getting money, or things that are very good for them, such as entertainment expenses and all sorts of expenses like that. Wouldn't they get paid that regardless of this transfer of funds? They might. Yes, they would. But that actually... What happens is that secures... They're having those benefits, and I would add, too, that the actual... Being a commissioner is an extremely prestigious position, so they're getting a lot of perks that are really related to the job that as long as they keep voting to transfer these excess funds to the city, they're going to get. They're going to remain as commissioners, so they're getting a lot of benefits. The mayor, the city council get the benefits of extra money that they can then use to convince their particular... To convince the city of Los Angeles people to vote for them, to vote for them because they've got nice perks that they can use with this quarter of a billion dollars that they get that they should never see. So they're getting... There's a lot of... And the two... They work hand in hand, so you've got the mayor and the voting to... I'm not that good on my feet, I will say. I've lost for words a lot of the times, but... Well, and I jumped in on Judge Collins' question. I don't know whether that interfered with your question or you got your question answered. No, I mean, the Wilkie case suggested that if they don't get a personal benefit and they're just being aggressive in filling the government till, that that doesn't fit extortion and that would affect your Hobbs and Ricoh, but you said you had a Ricoh predicate other than extortion, which would get around that problem, and I'm just wondering how that would be viable. The extortion is the fact that people don't... That if you stop paying these excess fees, you didn't pay your bill, your electric would be shut off, and goodness knows what might happen to you. It would depend on how ill you were, how... That's the extortion that they have that's in this. It's implicit in it that they are... Judge Collins was asking what Ricoh predicate acts aside from extortion have been alleged in the complaint, because Wilkie seems to exclude extortion in this particular instance. I'm sorry, I didn't hear you. Because Wilkie would exclude extortion given that the money goes to the government funds. I think that the argument in Wilkie is that Wilkie also only applies to federal government, the federal government, as opposed to... There's nothing that really says it applies to state actors, and so I don't think Wilkie does apply, but there is extortion here of the sort that I've just mentioned. There's also the illegal acts that they do. They violate... They're stealing from the plaintiffs, essentially, because they're violating Article 13 as amended by Proposition 26, which is very clear. I mean, it's clear that you can't do what they're doing, which is taking excess rates and using them for their own benefit, transferring them to the city, and it's very clear that they can't do that. And I'd like to reserve any other minutes, but I'd like to... You don't... You're actually over your time. You're actually over your time, so I'll give you a minute later anyway. Thank you. Thank you, Your Honor. Good morning, Your Honors. Michael Walsh on behalf of the city... Well, on behalf of the defendants. I don't want to belabor the Court's consideration of this. I think most of the issues... Well, I think all the issues, really, were well briefed. There are a couple of points, I think, that are worth raising, and not to spend too much time on the statutory claims. All the cases that have ever considered whether there's a private cause of action under Hobbs have agreed that there is not. Plaintiffs have cited nothing to the contrary, setting aside the issue that they waived the Hobbs Act from below, and plaintiffs did this courtesy of attaching their opposition to a supplemental excerpts. And you can... There's no argument defending a Hobbs claim there. They abandoned it below. But the district court ruled on the Hobbs Act claim, did it not? They rejected it, yes. Right. So the merits were reached. So, I mean, we had something to review, and they've challenged that ruling and properly filed an appeal to review the substantive ruling dismissing it. That's true. The Court did rule on it, and they did raise it in their opening brief. As the Justice pointed out, Wilkie largely foregoes... Well, pretty much eliminates fraud as a claim against a government entity. They spent a lot of time in the reply talking about how Wilkie was only addressing federal employees. And while the facts in that case did involve a federal employee, that's true, the Wilkie analysis was in no way limited to federal officials. In fact, if you look at one paragraph, I'm sorry, I forget the page, Wilkie addresses all of the previous Supreme Court cases addressing Hobbs claims as a part of its analysis as to what the scope of a private claim might be or of a Hobbs action. And they claim against state officials, claims against federal officials. The analysis of Wilkie is by no means limited to federal. It's government officials. And the question is whether they're doing something improper for private benefit or on behalf of their government, their official duties in the government interest. What is your view as to whether or not the Johnson Act bars jurisdiction? Do you agree with the district court or do you... I disagree with the district court in its own order flags its mistake. The district court says that the Johnson Act doesn't apply because there's jurisdiction or federal statutes. And that would be true with regard to the Hobbs and the Rico claims as they stand alone. Those claims fail on their own weight. So you suggest that we look at Johnson Act on a claim by claim basis. Well, the Johnson Act only applies to the 1983 claim. I think we made that quite clear in the is that the jurisdiction is based on a violation of the constitution or a 1983 claim, which is really a colorable way of saying a violation of the constitution. So it would not apply by itself to the Rico claim or the Hobbs claim as separate claims. That's true. But for all the reasons we stated in our briefs, those claims fail on their own right, leaving only the 1983 claim to which the Johnson Act would apply. But counsel says that because the jurisdiction of the court over the case doesn't rest exclusively on repugnance to the constitution, the 1983 claim, that therefore the act can't apply at all to the case. What is your response to that? Well, that it would never apply. Any sensible plaintiff's counsel would allege even a frivolous claim based on a federal statute. Well, that's the question, is how have we interpreted it? Have we interpreted it as narrowly as the district court describes, such that the whole complaint must exclusively rest on the diversity of citizenship or the repugnance to the constitution, or whether if you add in other claims, you get your 1983 claim? Right. And if the court rule interprets it that way, essentially you are eliminating the Johnson Act from practical application. Only a fool wouldn't allege at least a frivolous claim under a federal statute to create a 1983 claim, which they never always would have had. Can I ask you separately, is the state court litigation still going on? I thought this case was stayed until the state litigation was over. Well, and that, it should have been. One of the, the class action settled, the case was resolved. One of the class, one of the members that opted out appeal, that appeal is nearly over. So the case wasn't actually done. It's about to be done. As a result, our argument was this state shouldn't have been listed, shouldn't have been listed, lifted, I'm sorry, because in actuality, the state proceedings weren't entirely finished. The district court disagreed, thought that since the trial level proceedings were finished, he could proceed, which is why we're here now. They're nearly over. The oral argument's already taken place. The state appeal is about to be resolved. But no, in actuality, I agree with the suggestion of the court that maybe the state was lifted here too early. But you haven't raised that in your paper. No, no, we proceeded with the merits of the claim, or the lack of merits, I guess, from our point of view. But it was settled, and they're just negotiating, they're just dealing with the opt-out. Right. One of the parties was challenging the settlement. And that's what the basis of the appeal is. That was resolved. I think, well, I don't want to speculate. Based on the oral argument, it appears that's going to be resolved on procedural grounds and affirm the existing settlement. But of course, that hasn't actually happened yet. So you can't quote me on that. Okay. There's no record of this. In terms of points raised that the counsel raised in the oral argument, I think, well, in the Brooks case, I think Justice Collins suggested this as well, the fact that there was an Eleventh Amendment issue in that case has nothing to do with the Johnson Act issue. Brooks quite separately ruled that the Johnson Act applied. I'm sorry, I don't remember the specific names of the cases, but if you look at our multiple claims, federal statutory claims and Johnson Act claims, those courts found that the other claims, I think some of them were RICO, some of them were Hobbs, lacked merit, and then the Johnson Act applied to the remaining 1983 claims. There are holdings that specifically have that. I'm sorry, I don't recall the names off the top of my head. But those are all in our brief. And as I said, that's the only logical interpretation of the Act. Otherwise, you're literally eliminating the Act. Any plaintiff's counsel will be able to get around it, and that can't be how it's properly interpreted. As far as the personal gain, I think that's fairly straightforward. The factual allegations of the complaint are just as Justice Collins suggested of the pay and compensation that normally comes with that position. There's nothing to suggest that the money that was supposedly improperly taken in rates in any way translated to profits by any of the individuals involved. They were acting in their official capacity on behalf of the City of Los Angeles for the benefit of the City of Los Angeles. There's no factual allegation that suggests otherwise. I think it's worth noting, incidentally, that the City of Reading case that the plaintiffs spent so much time citing, the California Supreme Court case that addresses an allegation of improper rates that are allegedly improper taxes, in that case, there was a periodic transfer from the power company to the City General Fund. And the Supreme Court said that was perfectly acceptable. The fact that there was a transfer didn't mean the rates were excessive. And in that case, the Supreme Court found that the rates were perfectly legal and the transfers were perfectly legal. So the fact that there are transfers doesn't mean that the rates were illegal. As it is, of course, this panel doesn't have to get into the details of exactly how the DWP set its rates in this case because, as we set out in our brief, there isn't a basis for a federal claim in any case. This is a state law issue to be addressed by state courts. It's being resolved in that fashion. Whether through Hobbs or RICO or a 1983 action, there simply isn't a basis for a federal claim. And I sense Judge Woodlaw has a question. Oh, no. No, no, no. I was thinking of a question, but it's not for you. Oh, sorry. So one of the things, and I'll end with this unless the court has any other questions. Plaintiffs spend a lot of time trying to recharacterize this case as a right to vote case, that it's not really about utility rates. But of course it's about utility rates. The only interaction between the individuals and the city that's all in play is the rates that were set. They were proposed. There were public hearings, chance for public comment, public notice. There was an ordinance passed. There was an opportunity to challenge the There was a very public process. The rates were established. A bill goes out. It shows up as your rate. This is the rate you spent on electricity. They charge market rates for the electricity. There's no question about that. So of course the dispute here is over utility rates. Now, plaintiffs claims those rates were improper. Those rates were inflated. Those rates were unlawful under California law. This court doesn't have to get into those issues. But either way, we're talking about utility rates, whether improper or not, whether they were excessive or not. The issue is over utility rates. This is why the Johnson Act applies. And this is why all the other cases we talk about where there's no constitutional interest, there's no fundamental interest in utility rates. Even setting aside the Johnson Act, there are several cases that hold that. That this simply doesn't raise to a level of federal due process. In fact, the city of Reading case of the California Supreme Court at length addressed these issues. The term due process doesn't even appear. It's not an issue. The question is whether the rates were properly set. If they weren't, then there's a remedy for that under state law. In that case, the Supreme Court found that they were properly set. But in any case, there's not a fundamental due process right under the federal constitution that's been violated. And that's the fundamental gist of the case. Were these utility rates properly set? And that's a question of state law to resolve. I think everything else was The question I had for you that I wanted to ask earlier is, if you were allowed to amend this complaint, how would you amend it? I would amend the complaint to show additional benefits conferred with respect to the city defendants and potentially with respect to the commissioners. I would also like to add that with respect to predicates, it's alleged that fraud, extortion, mail fraud, and that would include mailing bills that contain these excess fees that are under Article 13C are characterized, are deemed to be a tax, mailing them every month. So you've got mail fraud, wire fraud. A lot of people do. I think that includes online payments. Fraudulent concealment. They didn't tell anybody what they were doing. They just did it. And that would include fraud. They did this year after year after year. They had the opportunity to deliberate. They could have looked at at least Article 13. They didn't. By its terms, it includes utility rates. It doesn't exclude them. And it actually provides, I think it's Article Section 1, a charge imposed for a specific benefit conferred or privilege granted directly to the payer that is not provided. So there's not charge in which does not exceed the reasonable cost to the local government of conferring the essentially the same thing. So it's when they start to charge excess fees that are then every year, quarter of a million dollars to 300 million transferred to the city, that that becomes illegal. It becomes unconstitutional. And it's contemplated as a deprivation of a property interest right under the 14th Amendment. And also deprivation of the right to vote, to have a vote before such a thing, such a tax is imposed. And everything that the defense did is replete with deception and deceit with respect to those excess fees. Even as to the argument today, oh, they're just rates. No, they weren't rates. They ceased to become rates when there were excess fees. Only the rates needed to carry out the electric power, only those rates necessary to suffice that weren't excessive would have been okay. They would have been rates, but any else's fees. All right. Thank you, counsel. Abkarian versus Levine is submitted. And this session of the court is adjourned for today. Thank you. Thank you.
judges: Wardlaw, Settle, Collins